

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BAYTREE LEASING COMPANY, LLC, a Delaware limited liability company, and BAYTREE NATIONAL BANK AND TRUST CO., <br><br> Plaintiffs, <br><br> v. <br><br> ALLIANCE INVESTORS, LLC, an Illinois limited liability company, and OFFICE OF THE COMPTROLLER OF THE CURRENCY, <br><br> Defendants. | Case No. 11-cv-6619 <br><br> Judge John W. Darrah |

## MEMORANDUM OPINION AND ORDER

Plaintiff Baytree National Bank & Trust Co. ("Baytree Bank") is a member of, and owns a fifty-one percent interest in, Plaintiff Baytree Leasing Company, LLC ("Baytree Leasing"). Defendant Alliance Investors, LLC ("Alliance"), is a member of, and owns the remaining forty-nine percent interest in, Baytree Leasing. Defendant the Office of the Comptroller of the Currency ("OCC") is the federal body charged with the regulation and supervision of federally chartered banks and federal savings associations, including Baytree Bank and its subsidiary, Baytree Leasing. Plaintiffs filed a Complaint, seeking declaratory judgment and an adjudication of the rights and obligations of the parties with respect to a Consent Order issued by the OCC. Defendants Alliance and the OCC have filed separate motions to dismiss Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction.

1

## BACKGROUND

Baytree Bank is a national bank which maintains its main office in Lake Forest, Illinois. (Compl. ¶ 1.) Baytree Leasing is a Delaware limited liability company in the business of providing financing and equipment leases and maintains its main office in Lake Forest, Illinois. (*Id.* ¶ 2.) Baytree Bank is a member of, and owns a fifty-one percent interest in, Baytree Leasing. (*Id.* ¶ 3.) Defendant Alliance is an Illinois limited liability company and has its main office in Highland Park, Illinois. (*Id.* ¶ 4.) Alliance is a member of, and owns a forty-nine percent interest in, Baytree Leasing. (*Id.* ¶ 4.) The OCC is the federal agency that regulates and supervises national banks, including Baytree Bank. (*Id.* ¶ 5.) The OCC also regulates the activities of Baytree Leasing, because it is a subsidiary of Baytree Bank. (*Id.*) The Plaintiffs claim subject-matter jurisdiction is proper under 28 U.S.C. § 1331, alleging the action arises under the laws of the United States, including the Supremacy Clause, the National Bank Act, and federal regulations established by the OCC. (*Id.* ¶ 6.) On April 17, 2009, Baytree Bank entered into a Consent Order with the OCC. (*Id.* ¶ 15.) The Consent Order required Baytree Bank to achieve and maintain certain capital levels by June 30, 2009. (*Id.* ¶ 16.) The Consent Order further provides the provisions of the Order "shall remain effective and enforceable, except to the extent that, and until such time as, any provisions of this Order shall have been amended, suspended, waived or terminated in writing by the Comptroller." (*Id.* ¶ 17.) The Consent Order states it should be construed as a cease-and-desist order issued pursuant to 12 U.S.C. § 1818(b). (*Id.* ¶ 18.)

On October 9, 2009, Baytree Bank and Alliance amended the Operating Agreement of Baytree Leasing. Amendment Section 6.2(b) provides that:

> [Alliance] shall receive sixty-five percent (65%), and Baytree [Bank] shall receive thirty-five percent (35%) of the proceeds

> attributable to the collected residual value of any leases over the amount recorded on the books of the Company as of the execution date of this First Amendment.

(*Id.* ¶ 19.) Pursuant to this amendment, Baytree Leasing made excess residual payments to Alliance for several months. (*Id.* ¶ 20.) However, the Complaint alleges that in March 2011, Baytree Bank received a communication from the OCC that prevents Baytree Bank or Baytree Leasing from making any additional excess residual payments to Alliance without violating the Consent Order. (*Id.* ¶ 21.) As a result of this communication, Baytree Leasing ceased making excess residual payments that were due to Alliance in April 2011, pursuant to the amendment. (*Id.* ¶ 22.)

Plaintiffs allege there is a dispute between the parties as to: (1) whether Alliance is entitled to continual excess residual payments under the Operating Agreement; (2) the amount of said payments; and (3) whether the payments would violate the Consent Order. Plaintiffs seek a declaratory judgment that would adjudicate the rights, obligations, and liabilities of the parties to this suit with respect to the Consent Order. Defendants Alliance and the OCC filed separate motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject-matter jurisdiction under the Federal Deposit Insurance Act ("FDI Act"), 12 U.S.C. § 1818. For the reasons set forth below, Defendants' motions to dismiss are granted.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) permits a party to move to dismiss a claim for lack of subject-matter jurisdiction. Federal courts are courts of limited jurisdiction and are permitted to exercise jurisdiction only when specifically authorized in a federal statute. *Evers v. Astrue,* 536 F.3d 651, 657 (7th Cir. 2008) (citations omitted). "Subject matter jurisdiction is so central to the district court's power to issue any orders whatsoever that it may be inquired into at any time, with or without a motion, by any party or by the court itself." *Craig v. Ontario Corp.,*

543 F.3d 872, 875 (7th Cir. 2008). In considering a motion to dismiss under Rule 12(b)(1), the district court must accept the complaint's well-pleaded factual allegations as true and draw all reasonable inferences from those allegations in the plaintiff's favor. *Transit Exp., Inc. v. Ettinger*, 246 F.3d 1018, 1023 (7th Cir. 2001). However, the plaintiff bears the burden of establishing subject-matter jurisdiction. *United Phosphorus Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003). A court ruling on a motion to dismiss under Rule 12(b)(1) may rely upon affidavits and other materials supporting its motion. *Id.*

## ANALYSIS

The FDI Act, which governs this dispute, is explicit as to the limited jurisdiction of the federal courts:

> The appropriate Federal banking agency may in its discretion apply to the United States district court, or the United States court of any territory, within the jurisdiction of which the home office of the depository institution is located, for the enforcement of any effective and outstanding notice or order issued under this section or under section 1831(o) or 1831(p-1) of this title, and such courts shall have jurisdiction and power to order and require compliance herewith; but except as otherwise provided in this section or under section 1831(o) or 1831(p-1) of this title *no court shall have jurisdiction to affect by injunction or otherwise the issuance or enforcement of any notice or order under any such section, or to review, modify, suspend, terminate, or set aside any such notice or order.*

12 U.S.C. § 1818(i) (emphasis added). According to this governing statute, upon which Plaintiffs rely for their jurisdictional basis, only the appropriate banking agency may ask a federal court to enforce an outstanding order. As the OCC issued the Consent Order, in this case, it would be the only agency with the authority to seek enforcement of the Consent Order.

Only three exceptions under the FDI Act permit a district court to have jurisdiction: (1) a court may set aside or limit a temporary cease-and-desist order, pending completion of administrative proceedings if sought within 10 days of service of the order; (2) a court may

4

enforce temporary cease-and-desist orders when an order is violated; and (3) a court may enforce outstanding notices and orders, such as subpoenas, as they relate to proceedings instituted by the OCC. *See* 12 U.S.C. § 1818(c)-(n); *First Nat'l Bank of Chicago v. Steinbrink*, 812 F. Supp. 849, 851 (N.D. Ill. 1993) (*Steinbrink*) (holding the court lacked subject-matter jurisdiction based on the statutory language precluding jurisdiction). None of the three exceptions are applicable in the present case.

Plaintiffs argue jurisdiction exists because they seek a finding that the Consent Order be a "valid and continuing cease-and-desist order," rather than seeking to specifically "change" or affect the Consent Order. This argument is unpersuasive. The language of the FDI Act is clear: a district court is precluded from making a determination which would "affect" or "review" the Consent Order. 12 U.S.C. § 1818(i). Moreover, the Complaint specifically seeks "[t]hat this Court declare and adjudicate the rights, obligations and liabilities of the parties to this suit with respect to the Consent Order and Amendment." (Compl. ¶ 39(a).) If this relief were provided to Plaintiffs, it would necessarily require, at a minimum, a *review* of the Consent Order, which would violate the FDI Act. Even if the Consent Order were deemed a final order, a district court would not have subject-matter jurisdiction over its review; rather, "[j]udicial review of final orders . . . falls strictly within the province of the 'court of appeals for the circuit in which the home office of the depository institution is located.'" *Steinbrink*, 812 F. Supp at 851-52 (quoting 12 U.S.C. § 1818(h)(2)).

The FDI Act was clearly drafted to prevent a district court from reviewing or handling a claim where administrative remedy still exists. "The clarity of the congressional preclusion review in § 1818(i)(1), coupled with the meaningful and adequate opportunity for judicial review by the court of appeals following a final administrative order, provides clear and convincing

5

evidence that Congress intended to deny the District Court jurisdiction to review and enjoin the ongoing administrative proceedings." *Steinbrink*, 812 F. Supp at 852 (internal quotations omitted). By seeking a determination of the validity and scope of the Consent Order, Plaintiffs inherently seek a review of the Consent Order, which goes beyond the jurisdiction of a district court. If Plaintiffs seek guidance regarding the meaning of the Consent Order, they must request a final order to be issued, and only then may they seek judicial review in the Seventh Circuit. *See* 12 U.S.C. § 1818(h).

## CONCLUSION

For the reasons discussed above, Defendants' motions to dismiss for lack of subject-matter jurisdiction are granted. Plaintiffs' Complaint is dismissed without prejudice.

Date: 3-21-12

JOHN W. DARRAH
United States District Court Judge